## Commonwealth v. Valvano

*C. M. O'Malley* and *H. R. Edwards,* for Commonwealth.

*A. F. Vosburg* and *Alex Marcus,* for defendant.

LEWIS, J., May 28, 1937.—Defendant, Frank Valvano, was indicted on a charge of: (*a*) Obstructing legal process; (*b*) aggravated assault and battery, and assault and battery.

Upon trial before a jury he was convicted of obstructing legal process and aggravated assault and battery. From said convictions he has obtained rules for new trial and motion in arrest of judgment, respectively.

The facts are substantially as follows: On January 17, 1936, deputy sheriffs T. Ferguson and A. I. Fowler went to the home of defendant, in the City of Scranton, with a writ of replevin in which cause of action Frank Valvano, defendant, was named a party defendant. The said writ of replevin was issued out of the court of common pleas of this county to no. 104, March term, 1936. The chattel sought to be replevied was a washing machine which was on the premises of defendant. The deputy served the writ of replevin but did not take physical possession of the washing machine for the reason, as they explained to the wife of defendant, that they had 72 hours to file a counter replevin bond, in which event if said bond was filed the chattel would remain in possession. On the other hand, if no such bond was filed the sheriff would return and take possession of the chattel. At the expiration of the 72 hours from the time the writ of replevin was served, the deputy sheriffs called a second time at the home of defendant. There being no one in

the house on their second visit they departed without any action on the writ. On February 3, 1936, Deputy Sheriffs A. I. Fowler and George Yavorek went to the home of defendant for the purpose of taking the chattel in question and turning it over to the plaintiff in the civil action. When they arrived at the home they found the door locked. They rapped on the window and produced their credentials as deputy sheriffs, informed the occupants in the house that they represented the sheriff's office and that they wanted the washing machine. Upon being refused admittance to the home, deputy sheriffs Fowler and Yavorek finally got an automobile spring leaf from a truck driver and with that implement Yavorek and Fowler opened the door and got into the house. As Yavorek entered the house the door instantly closed behind him at which time Yavorek was assaulted by defendant Frank Valvano. The testimony of Yavorek was to the effect, that he was left alone in the house and that Mrs. Valvano and her husband, Frank Valvano, made vicious attacks upon him with a baseball bat; that after the assault Yavorek was compelled to secure the services of a physician. Three days after the assault the washing machine was turned over to the sheriff's office peaceably.

The defense was that Yavorek was the aggressor. There was a great deal of conflict in the testimony between the prosecution and defense, as we have fully described the same in our charge to the jury. The jury having found a verdict of guilty there is no necessity to recite the facts any further. It was peculiarly a question of fact for the jury to pass upon. The question for the court to decide is whether a new trial should be granted and whether a motion in arrest of judgment should be sustained.

As to the motion in arrest of judgment, it suffices to say the indictments were carefully drawn in the language of the act of assembly and there is no defect apparent on the face of the record. Hence, the motion in arrest of judgment must be overruled.

"Where in a criminal prosecution it appears that there was no defect in the record or the indictment, that the issue was properly formed and that the verdict found the defendant guilty as indicted, a motion in arrest of judgment should be overruled.

"Judgments can only be arrested in criminal cases for cause appearing upon the face of the record. The record to be considered consists of the indictment, the plea and issue and verdict. The evidence in the case forms no part of the record within the rule that a motion in arrest of judgment can be based only on matters of record, and hence defects which appear only by aid of evidence cannot be the subject of such a motion. No judgment should be arrested because of a perverse verdict, one contrary to the instruction of the court, or a verdict not supported by competent evidence, or upon the ground that the court refused to give instructions in favor of the defendant or otherwise erred in its instructions to the jury": Commonwealth v. Bateman, 92 Pa. Superior Ct. 53.

As to the reason for a new trial, defendant assigns as error as follows:

"7th reason: The learned court erred in charging the jury in substance that the sheriff had no right to break and enter a dwelling house to serve a writ of replevin in the first instance, but he had a right to break in and enter later if necessary, to obtain the articles described in the writ."

We are of the opinion that our charge was correct on that point and in our judgment is in accord with the ruling in the case of Jones v. Herron, 12 Pa. C. C. 183, wherein the court held that the sheriff had a right to break the door for the purpose of executing a writ of replevin. We will cite the whole opinion for the reason that the same is short.

"A writ of replevin for certain household furniture was issued at the suit of George Kelly against Edward E. Rockwell, who occupied the second floor of the dwelling-

house of the plaintiff. When the deputy sheriff went to execute the writ he rang the bell at the side door, which was opened by the plaintiff. The deputy told his business, and was promptly thrown or pushed off the steps into the street. He then tried to enter at the second story by means of a ladder, but did not succeed. Then he opened a window on the ground floor of the house, and, with two or three assistants, entered the house. When inside, he was assaulted by the plaintiff, who was armed with a bar of iron, and his wife, who had a hatchet for a weapon. The encounter was quite spirited. The deputy sheriff was first knocked down by the plaintiff, and one of the deputy's assistants was cut on the arm by the plaintiff's wife. However, the posse comitatus prevailed. The plaintiff was arrested by policemen and taken to the station-house, and the plaintiff's wife was carried away in a swoon. Out of this episode this suit arises. The defendant in this suit was one of the assistants of the sheriff. He is an employe of George Kelly, plaintiff in replevin suit, and went with the deputy sheriff to point out the goods, and assist in executing the writ, and is sued for a trespass and assault and battery.

"The principal question is as to the right of the sheriff to break open doors, or, what is the same, enter by way of a window in executing a writ of replevin. The rule undoubtedly is that in executing civil process generally he cannot break open doors or enter by force, but there are exceptions to it, of which replevin is one of the most important. The reason is that a man's house is his castle for the protection of himself and his property against civil process, as a writ of fieri facias to take his goods in execution, or a capias in a civil suit by a private person. For the command of the writ being to take his goods to sell them under a fi. fa., he is entitled to the protection his castle affords him; but in a writ of replevin the command is to take the goods of a plaintiff who has entered security for their return if he fails to prove his title to the property, and, under the common law and statute, the sheriff

may break outer doors or enter by unusual ways for the purpose of executing the writ.

"Semayne's Case, 5 Coke, 185, and 1 Smith's Leading Cases, *183, is the leading case on the subject. It shows the instances in which the sheriff may break outer doors. Replevin is one of them, and this, it is said, is by statute Westminster I, chap. 17. And although this statute is not among those reported to be in force in this state, yet it is said that the Act is but an affirmance of the common law: Morris on Replevin, 113, 114; Semayne's Case. The sheriff may break open or beat down a castle, fort or house, to make replevy and deliverance of cattle there imprisoned and withholden; but he may not break a close to make a replevin, where there is a gate, except that it be locked up: Dalton on Sheriffs, 353. Under the common law a man's house is his castle, and an officer cannot legally break in to execute a ca. sa. or fi. fa. upon the tenant or his goods, but he may do so where the process requires him to take possession of any particular thing, as to execute a writ of seizin, habere facias, replevin or capias utlagatum: Keith v. Johnson, 1 Dana, 604. By the common law an officer, in the execution of process directing him to take specific property, might forcibly enter any building containing it, after having demanded and been refused admission for the purpose of the execution of such process: Howe v. Oyer, 50 Hun, 529. Textwriters have written the same way. See Freeman on Executions, §468; Cobbey on Replevin, §647; Murfree on Sheriffs, §156.

"The foregoing applies to cases in which the owner of the house is the defendant in the suit in replevin. But where a third person is the defendant in such a suit, then the asylum which a castle affords is no asylum for him. In Semayne's Case the fifth resolution was, 'that the house of any one is not a castle or privilege but for himself, and shall not extend to protect any person who flies to his house, or the goods of any other, which are brought and conveyed into his house to prevent a lawful execu-

tion and escape the ordinary process of the law; for the privilege of his house extends only to him and his family, and to his own proper goods, or to those which are lawfully, and without fraud and covin, there; and, therefore, in such cases, after denial on request made, the sheriff may break the house.' It is but polite, and therefore usual, to make demand first before breaking the doors, but the omission of this ceremony will not make the sheriff a trespasser. He acts, however, at his peril, for, if he does not find the goods, he is a trespasser. But he is not an outlaw, and it is not lawful to beat him, for, if he gains admission by fraud, an assault on him is not justifiable: Rex v. Backhouse, Lofft. 62.

"I have not been able to find any case in this state directly in point on the facts, but in Kneas v. Fitler, 2 S. & R. 263, Mr. Justice Yeates, on page 265, said that a sheriff may break open doors to execute a replevin in certain instances.

"In the present case the jury was instructed that the sheriff was justified in entering the house by way of the window, and that the question was, who commenced the fight when he was inside the house? If the plaintiff was the aggressor, he had no right to complain of the beating, but if the sheriff wantonly assaulted him, the sheriff was in fault. The jury found for the defendant, and properly too. The plaintiff has no one to blame but himself.

"Rule refused."

There is very little that can be added to what the court in the last cited case said. Defendant had a fair trial, all issues were fully submitted to the jury in a comprehensive charge, the convictions were justified under the evidence and the verdict of the jury must be carried into effect.

Now, therefore, May 28, 1937, motions in arrest of judgment and for a new trial are denied and rules therefor discharged. The district attorney is hereby directed to call defendant, Frank Valvano, for sentence.